IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 25, 2021

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | MAG. NO. 21-mj-567 |
| | : | |
| Georgy Kakhovich Kavzharadze, | : | VIOLATIONS: |
| | : | |
| a/k/a "TeRorPP" | : | 18 U.S.C. § 1349 |
| a/k/a "Torqovec" | : | (Conspiracy) |
| a/k/a "PlutuSS" | : | |
| a/k/a "George Kakhovich Kavzharadze" | : | 18 U.S.C. § 1343 |
| | : | (Wire Fraud) |
| Defendant. | : | |
| | : | 18 U.S.C. § 1344(2) |
| | : | (Bank Fraud) |
| | : | |
| | : | 18 U.S.C. § 1029(a)(2) |
| | : | (Access Device Fraud) |
| | : | |
| | : | 18 U.S.C. § 1029(a)(3) |
| | : | (Access Device Fraud) |
| | : | |
| | : | 18 U.S.C. § 1028A(a)(1) |
| | : | (Aggravated Identity Theft) |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : | (Aiding and Abetting) |
| | : | |
| | : | Criminal Forfeiture: |
| | : | 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § |
| | : | 982(a)(2)(B); 18 U.S.C. § 1029(c)(1)(C); |
| | : | 28 U.S.C. § 2461(c) |

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

At times material to this indictment:

1.      Defendant Georgy Kakhovich Kavzharadze ("KAVZHARADZE"), also known as "TeRorPP," "PlutuSS," "Torqovcc," and "George Kakhovich Kavzharadzc" was a citizen and resident of Russia.   KAVZHARADZE had no known residence or past residence in the United States.

2.      Personally identifiable information ("PII") was a term that referred to people's names, social security numbers, dates of birth, addresses, phone numbers, bank account numbers, bank routing numbers, bank account information, and online account usernames and passwords.

3.      Slilpp was an online marketplace dedicated to the sale of stolen login credentials that enable access to online accounts, including but not limited to accounts provided by financial institutions, online payment providers, and retailers.   Notwithstanding the unlawful nature of the transactions that it facilitated, Slilpp otherwise operated like many online marketplaces, such as eBay or Amazon marketplace, which allow third parties to create vendor accounts, and to sell goods and services.   Slilpp allowed vendors to sell login credentials and related PII and to receive payments through Slilpp as an intermediary.   The administrator(s) of Slilpp obtained fees from a percentage of sales.

4.      Bank A, whose identity is known to the Grand Jury, was a financial institution within the meaning of Title 18, United States Code, Section 20, having accounts insured by the Federal Deposit Insurance Corporation, with its principal place of business located in Charlotte, North Carolina.  Bank A provides its customers with online accounts linked to their bank accounts with Bank A.

5.      Bank B, whose identity is known to the Grand Jury, was a financial institution within the meaning of Title 18, United States Code, Section 20, having accounts insured by the Federal Deposit Insurance Corporation, with its principal place of business located in San

Francisco, California.   Bank B provides its customers with online accounts linked to their bank accounts with Bank B.

6.      Bank C, whose identity is known to the Grand Jury, was a financial institution within the meaning of Title 18, United States Code, Section 20, having accounts insured by the Federal Deposit Insurance Corporation, with its principal place of business located in New York, New York.   Bank C provides its customers with online accounts linked to their bank accounts with Bank C.

7.      Bank D, whose identity is known to the Grand Jury, was a financial institution within the meaning of Title 18, United States Code, Section 20, having accounts insured by the Federal Deposit Insurance Corporation, with its principal place of business located in Las Vegas, Nevada.   Bank D provides its customers with online accounts linked to their bank accounts with Bank D.

8.      Company E, whose identity is known to the Grand Jury, was an online payment processing company headquartered in California.   Company E provides its customers with online accounts that can be linked to various payment sources, including bank accounts and credit cards.

## Schemes and Conspiracies

9.      The administrator(s), sellers, and customers of Slilpp participated in and conducted, individually and collectively, criminal schemes to profit from the fraudulent use of stolen login credentials, schemes that necessarily involved Wire Fraud, Bank Fraud, Access Device Fraud, and Aggravated Identity Theft.   The administrator(s) of Slilpp knowingly, intentionally, and willfully created, maintained, and operated an internet-based platform that sellers, such as KAVZHARADZE, knowingly, intentionally, and willfully used to sell stolen login credentials. The administrator(s) and the sellers worked together, through Slilpp, to sell those stolen login

credentials, and to share the proceeds of the sales, knowing that their customers would unlawfully use said login credentials to fraudulently obtain money, property, and PII belonging to innocent owners.

10.     In or about December 2012, having previously conceived of a criminal scheme to profit from the fraudulent use of stolen login credentials, which scheme necessarily involved Bank Fraud, Wire Fraud, and Access Device Fraud, KAVZHARADZE registered for a Slilpp account. KAVZHARADZE obtained his Slilpp account with the moniker "TeRorPP."   As of March 2021, Slilpp User 633, "TeRorPP" has changed his username to "PlutuSS."

11.     Thereafter, between about May 2016, and continuing through at least May 2021, KAVZHARADZE conspired with the administrator(s) of Slilpp to commit Bank Fraud and Wire Fraud, and to profit from Bank Fraud and Wire Fraud, by selling stolen login credentials through Slilpp, and by sharing the proceeds with the administrator(s) of Slilpp.

12.     During the period from May 2016 through at least May 2021, including May 27, 2021, KAVZHARADZE further executed his criminal scheme by unlawfully obtaining login credentials and other PII related to accounts provided by Bank A, B, C, and D and Company E; by unlawfully possessing said login credentials and PII with the intent to sell or otherwise profit from said credentials; by unlawfully selling stolen login credentials and PII through the Slilpp website; and by purposefully enabling his customers to access stolen online accounts in order to steal from Bank A, B, C, and D and Company E.

13.     In furtherance of these schemes and conspiracies, and working together with the administrator(s) of Slilpp, and using the website operated by the administrator(s) of Slilpp, KAVZHARADZE – using, among other things, the moniker(s) "TeRorPP" and "PlutuSS" – listed for sale, and sold, login credentials for numerous online accounts, including accounts from Bank

A, B, C, and D, Company E and others.   KAVZHARADZE continued to do so through at least May 2021, through Slilpp.   As of May 27, 2021, KAVZHARADZE's account on Slilpp listed for sale login credentials for over 240,495 online payment accounts, bank accounts, and other accounts.

14.     It was part of the scheme that KAVZHARADZE and the administrator(s) of Slilpp used online digital currencies, such as Bitcoin, to send, receive, and distribute payments for the purchase and sale of login credentials and related PII that enabled their purchasers to access the relevant accounts.

15.     Over the course of the scheme, KAVZHARADZE sold login credentials and related PII for over 300,000 accounts, including accounts from Banks A, B, C, D, Company E and others.

## COUNT ONE
### (Conspiracy)

16.     Paragraphs 1 through 15 are re-alleged here.

### Overview

17.     Beginning in about May 2016 through at least May 2021, and beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE did knowingly and willfully combine, conspire, confederate, and agree with the administrator(s) of Slilpp to commit the offenses of Bank Fraud and Wire Fraud; that is, to commit the following offenses:

a.     In violation of Title 18, United States Code, Section 1343, having devised, and having intended to devise, a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute such scheme and artifice, transmitted, and caused to be

transmitted, in interstate and foreign commerce, certain wire communications, in furtherance of said scheme and artifice to defraud;

      b.     In violation of Title 18, United States Code, Section 1344(2), knowingly executed, and attempted to execute, a scheme and artifice to obtain funds under the custody and control of financial institutions, by means of false and fraudulent pretenses, representations, and promises; in violation of Title 18, United States Code, Sections 1349, 1343, and 1344(2).

### Object of the Conspiracy

18.     It was the object of the conspiracy that KAVZHARADZE and the administrator(s) of Slilpp would unjustly enrich themselves, and each other, by working together to sell stolen login credentials through the website for Slilpp.

### Manner and Means of the Conspiracy

19.     During the course of the conspiracy, including between May 2016 and at least May 2021, KAVZHARADZE unlawfully obtained and possessed stolen login credentials for online accounts linked to bank accounts and other online accounts, including bank accounts provided by Bank A, B, C, D and online payment accounts provided by Company E as well as other accounts.

20.     During the course of the conspiracy, the administrator(s) of Slilpp maintained, promoted, operated, and provided an online platform, that is, the website of Slilpp, that facilitated KAVZHARADZE's sale of stolen login credentials.  The administrator(s) advertised Slilpp online, including by promoting "sales," such as a "Cyber Monday Sale," online.  The administrator(s) also maintained policies and procedures, including refund procedures, to ensure that Slilpp was both efficient, profitable, and attractive to customers.  The administrator(s) also maintained records of transactions conducted over Slilpp and its website, to ensure the continued operation of Slilpp.

21.     During the course of the conspiracy, KAVZHARADZE uploaded stolen login credentials to Slilpp, that is, KAVZHARADZE electronically transmitted stolen login credentials to his "TeRorPP" and "PlutuSS" account on Slilpp, such that said login credentials would be listed for sale through Slilpp.

22.     During the course of the conspiracy, the administrator(s) of Slilpp ensured that customers could purchase KAVZHARADZE's stolen login credentials through the Slilpp website. KAVZHARADZE was thereby able to successfully sell numerous login credentials through Slilpp.

23.     Between May 2016 and May 2021, KAVZHARADZE sold several hundred stolen login credentials which were linked to online accounts provided by Bank A, B, C, D, Company E, and others which were used to conduct fraudulent transactions totaling approximately $5,286,712.69. For example:

  a. On or about June 9, 2016, though the Slilpp website, KAVZHARADZE sold about 11 sets of login credentials linked to accounts provided by Bank(s) B and C.

  b. On or about September 4, 2016, though the Slilpp website, KAVZHARADZE sold about 27 sets of login credentials linked to accounts provided by Bank(s) A and C.

  c. On or about September 13, 2016, though the Slilpp website, KAVZHARADZE sold about 11 sets of login credentials linked to accounts provided by Bank(s) A and C.

  d. On or about January 20, 2017, though the Slilpp website, KAVZHARADZE sold about 15 sets of login credentials linked to accounts provided by Bank C.

  e. On or about February 15, 2017, though the Slilpp website, KAVZHARADZE sold about 17 sets of login credentials linked to accounts provided by Bank A.

    f.   On or about February 17, 2017, though the Slilpp website, KAVZHARADZE sold about 19 sets of login credentials linked to accounts provided by Bank A.

    g.   On or about December 2, 2016, though the Slilpp website, KAVZHARADZE sold about 3 sets of login credentials linked to accounts provided by Company E.

24.     Thereafter, KAVZHARADZE continued to sell, and to advertise for sale, login credentials through the Slilpp website.   As of May 27, 2021, an FBI undercover employee accessed the Slilpp marketplace and observed that KAVZHARADZE'S account "PlutuSS" had 240,495 credentials available for sale.

25.     During the course of the conspiracy, the administrator(s) of Slilpp received Bitcoin payments from third parties who purchased KAVZHARADZE's stolen login credentials. Pursuant to Slilpp policies that were agreed to by KAVZHARADZE and other sellers, the administrator(s) of Slilpp retained a percentage share of those proceeds.   The administrator(s) of Slilpp directed the remaining proceeds of the sales to KAVZHARADZE.   For example, between May 2016 through March 2018, customers purchased login credentials from KAVZHARADZE for Bank(s) A, B, C, Company E, and others in exchange for over $389,709.33 in Bitcoin.   During that same period, based on those sales and other sales on Slilpp, KAVZHARADZE withdrew over $184,554.04 in Bitcoin from his Slilpp account.

**(Conspiracy, in violation of Title 18, United States Code, Sections 1349, 1343, 1344(2) and 2)**

## COUNT TWO
### (Bank Fraud)

26.    Paragraphs 1 through 15 are re-alleged here.

27.    Between about on or about between May 2016 through at least May 2021, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular

State or district, KAVZHARADZE knowingly devised and intended to devise, and aided and abetted others in devising, a scheme and artifice to defraud, and for obtaining money and property owned by, or in the custody and control of, financial institutions in the United States by means of materially false and fraudulent pretenses, representations, and promises.

28.     On or about June 9, 2016, beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE knowingly executed the scheme and artifice to defraud set forth above, in that KAVZHARADZE, in exchange for payment through Slilpp, sold login credentials for an online account linked to a bank account at Bank B, thereby enabling fraudulent access to that bank account.

**(Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) and 2)**

## COUNT THREE
**(Bank Fraud)**

29.     Paragraphs 1 through 15 are re-alleged here.

30.     Between about on or about between May 2016 through at least May 2021, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district, KAVZHARADZE knowingly devised and intended to devise, and aided and abetted others in devising, a scheme and artifice to defraud, and for obtaining money and property owned by, or in the custody and control of, financial institutions in the United States by means of materially false and fraudulent pretenses, representations, and promises.

31.     On or about September 4, 2016, beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE

knowingly executed the scheme and artifice to defraud set forth above, in that KAVZHARADZE, in exchange for payment through Slilpp, sold login credentials for an online account linked to a bank account at Bank C, thereby enabling fraudulent access to that bank account.

**(Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) and 2)**

## COUNT FOUR
### (Bank Fraud)

32.     Paragraphs 1 through 15 are re-alleged here.

33.     Between about on or about between May 2016 through at least May 2021, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district, KAVZHARADZE knowingly devised and intended to devise, and aided and abetted others in devising, a scheme and artifice to defraud, and for obtaining money and property owned by, or in the custody and control of, financial institutions in the United States by means of materially false and fraudulent pretenses, representations, and promises.

34.     On or about February 15, 2017, beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE knowingly executed the scheme and artifice to defraud set forth above, in that KAVZHARADZE, in exchange for payment through Slilpp, sold login credentials for an online account linked to a bank account at Bank A, thereby enabling fraudulent access to that bank account.

**(Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) and 2)**

## COUNT FIVE
### (Bank Fraud)

35.     Paragraphs 1 through 15 are re-alleged here.

36.    Between about on or about between May 2016 through at least May 2021, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district, KAVZHARADZE knowingly devised and intended to devise, and aided and abetted others in devising, a scheme and artifice to defraud, and for obtaining money and property owned by, or in the custody and control of, financial institutions in the United States by means of materially false and fraudulent pretenses, representations, and promises.

37.    On or about May 27, 2021, beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3237, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE knowingly executed the scheme and artifice to defraud set forth above, in that KAVZHARADZE, in exchange for payment through Slilpp, sold five sets of login credentials and other PII related to online accounts linked to bank accounts at Bank D, thereby enabling fraudulent access to that bank account.

**(Bank Fraud, in violation of Title 18, United States Code, Sections 1344(2) and 2)**

## COUNT SIX
### (Access Device Fraud)

38.    Paragraphs 1 through 15 are re-alleged here.

39.    Between July 2016 and December 2016, including on or about September 4, 2016, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district, KAVZHARADZE, knowingly and with intent to defraud, and in a manner affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions, trafficked in one or more unauthorized access devices, that is, login credentials, including usernames and associated passwords, for access to online accounts provided by hundreds

of companies, by possessing with intent to sell and by selling said access devices, and by such conduct, between July 2016 and December 2016, in a period of less than one year, obtained anything of value aggregating $1,000.00 or more.

**(Access Device Fraud, in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A)(i) and (2))**

## COUNT SEVEN
**(Access Device Fraud)**

40.     Paragraphs 1 through 15 are re-alleged here.

41.     Between January 3, 2017 and December 31, 2017, including on or about February 17, 2017, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district, KAVZHARADZE, knowingly and with intent to defraud, and in a manner affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions, trafficked in one or more unauthorized access devices, that is, login credentials, including usernames and associated passwords, for access to online accounts provided Bank A, C, and other service providers by possessing with intent to sell and by selling said access devices, and by such conduct, between January 3, 2017 and December 31, 2017, in a period of less than one year, obtained anything of value aggregating $1,000.00 or more.

**(Access Device Fraud, in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A)(i) and (2))**

## COUNT EIGHT
**(Access Device Fraud)**

42.     Paragraphs 1 through 15 are re-alleged here.

43.     Between January 2018 and December 2018, including on or about March 19, 2018, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any

particular State or district, KAVZHARADZE, knowingly and with intent to defraud, and in a manner affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions, trafficked in one or more unauthorized access devices, that is, login credentials, including usernames and associated passwords, for access to online accounts provided by hundreds of companies, by possessing with intent to sell and by selling said access devices, and by such conduct, between January 2018 and December 2018, in a period of less than one year, obtained anything of value aggregating $1,000.00 or more.

**(Access Device Fraud, in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A)(i) and (2))**

## COUNT NINE
**(Access Device Fraud)**

44.     Paragraphs 1 through 15 are re-alleged here.

45.     On or about January 20, 2017, KAVZHARADZE, knowingly and with intent to defraud, possessed fifteen or more unauthorized access devices, that is, login credentials, including usernames and associated passwords, for access to online accounts provided by Bank C, said possession affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions.

**(Access Device Fraud, in violation of Title 18, United States Code, Section 1029(a)(3), (c)(1)(A)(i) and (2))**

## COUNT TEN
**(Access Device Fraud)**

46.     Paragraphs 1 through 15 are re-alleged here.

47.     On or about February 17, 2017, KAVZHARADZE, knowingly and with intent to defraud, possessed fifteen or more unauthorized access devices, that is, login credentials, including

usernames and associated passwords, for access to online accounts provided by Bank A, said possession affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions.

**(Access Device Fraud, in violation of Title 18, United States Code, Section 1029(a)(3), (c)(1)(A)(i) and (2))**

## COUNT ELEVEN
**(Access Device Fraud)**

48.     Paragraphs 1 through 15 are re-alleged here.

49.     On or about March 3, 2018, KAVZHARADZE, knowingly and with intent to defraud, possessed fifteen or more unauthorized access devices, that is, login credentials, including usernames and associated passwords, for access to online accounts provided by numerous providers, said possession affecting interstate and foreign commerce by the use of interstate and foreign wire transmissions.

**(Access Device Fraud, in violation of Title 18, United States Code, Section 1029(a)(3), (c)(1)(A)(i) and (2))**

## COUNTS TWELVE - FIFTEEN
**(Aggravated Identity Theft)**

50.     Paragraphs 1 through 15 are re-alleged here.

51.     Between February 12, 2018 through September 19, 2018 on dates as set forth below for each count, in the District of Columbia and elsewhere, and beginning outside of the jurisdiction of any particular State or district and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, KAVZHARADZE, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, Bank Fraud, in violation of 18 U.S.C. § 1344(2) and Access Device Fraud, in

violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1029(a)(3), did knowingly possess and transfer, without lawful authority, a means of identification of another person, that is, login credentials for online accounts provided by numerous companies, knowing that said means of identification belonged to another actual person, said login credentials belonging to the following persons for each count:

| Count | Person | Date | Marketplace |
|-------|--------|------|-------------|
| Twelve | K.B. | March 6, 2018 | Slilpp |
| Thirteen | E.B. | March 1, 2018 | Slilpp |
| Fourteen | E.C | June 7, 2018 | Slilpp |
| Fifteen | A.T. | September 19, 2018 | Slilpp |

**(Aggravated Identity Theft, in violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), (5))**

## FORFEITURE ALLEGATION

52.　　Upon Conviction of the offense in violation of Title 18, United States Code, Section 1344 set forth in Count Two through Five of this Indictment, the defendant, KAVZHARADZE, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

53.　　If any of the property described above, because of any act or omission of the defendant:

　　　　a.　　cannot be located upon the exercise of due diligence;

　　　　b.　　has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided
        without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

54.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 1029 set forth in Counts Six through Eleven of this Indictment, the defendant, KAVZHARADZE, shall forfeit to the United States of America --

(A) pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s);

(B) pursuant to Title 18, United States Code, Section 1029(c)(1)(C), any personal property used or intended to be used to commit the offense[s].

55.      If any of the property described above, as a result of any act or omission of the defendant[s]:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without
        difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections

982(b)(1) and 1029(c)(2) and Title 28, United States Code, Section 2461(c).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title
18, United States Code, Section 982(a)(2)(B), Title 18, United States Code, Section
1029(c)(1)(C), and Title 28, United Sates Code, Section 2461(c))**

A TRUE BILL

_____

Foreperson

_____
CHANNING PHILLIPS
ACTING UNITED STATES ATTORNEY