IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**GEORGY KAKHOVICH KAVZHARADZE,**<br>a/k/a "TeRorPP,"<br>a/k/a "Torqovec,"<br>a/k/a "PlutuSS,"<br>a/k/a "George Kakhovich Kavzharadze,"<br><br>*Defendant.* | Case No. 21-MJ-567<br>21-CR-531 (CKK) |

## UNITED STATES MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Georgy Kavzharadze pursuant to 18 U.S.C. § 3142(f)(2)(A).

### Procedural History

On August 24, 2021, a federal grand jury returned a fifteen-count indictment against the defendant, charging him with the following: one count of Conspiracy to Commit Bank and Wire Fraud, in violation of 18 U.S.C. § 1349, 1343, 1344(2) (Count 1); four counts of Bank Fraud, in violation of 18 U.S.C. § 1344(2) (Counts 2, 3, 4, and 5); three counts of Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2) (Counts 6, 7, and 8); three counts of Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(3) (Counts 9, 10, and 11); and four counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 11, 12, 13, 14, and 15).  The Honorable Robin M. Meriweather issued a warrant for defendant's arrest the same day.  The Indictment is the result of a long-term investigation into the operations, administrators, vendors, and buyers of the online criminal marketplace of Slilpp.

1

**Factual Background**

On June 9, 2021, the FBI, in a coordinated action with international law enforcement partners, disrupted the criminal marketplace known as Slilpp, pursuant to legal authority, seizing its infrastructure and domain names. From at least 2012 until the disruption, Slilpp was a website that functioned as a marketplace where vendors and customers sold and bought stolen account login credentials, financial account information, and other personally identifying information (or PII). The stolen account information offered for sale and purchased via Slilpp could be used to steal money, for example, through the unauthorized use of online accounts that are linked to credit cards, bank accounts, or debit cards.

Slilpp operates much like Amazon or eBay, in that it allows vendors to sell stolen login credentials, and allows customers to buy stolen login credentials, by operating a website that provides a forum and payment mechanism for the above-described transactions. However, Slilpp is different from Amazon or eBay in that it is dedicated to illegal carding activity. Slilpp has operated through websites with the domains slilpp.net, slilpp.org, and slilpp.xyz.

The Slilpp marketplace functions as a conspiracy – a collective enterprise requiring multiple participants with different roles, including roles for promoting Slilpp, operating the website, sellers uploading account credentials[1] and personally identifiable information (PII) to sell, and buyers purchasing account credentials. In order for the marketplace to function, participants share the common purpose of profiting from the illegal sale of account credentials, financial account information, and PII. Importantly, the credentials and information sold are used to defraud

---

[1] Account credentials are a unique username and password combination used to access an online resource, such as a banking website, company user accounts, and other protected computer systems. Account credentials offered on Slilpp often included additional information necessary to use or fraudulently authenticate as the user. Generally, the additional information sold with account credentials included user/victims' PII (addresses, country codes, full legal names) and financial account information (bank account and credit card numbers).

businesses and account holders of funds, and Slilpp market participants knowingly profit from and promote this activity.

When a buyer makes a purchase on Slilpp, the buyer's money is transmitted to Slilpp, which takes a share of the proceeds as its fee, and then transfers the remaining payment to the Slilpp seller. The Slilpp database shows that Slilpp paid its sellers using the virtual currency Bitcoin. The Bitcoin system depends on a public ledger that precisely identifies all transactions, including the identification of the Bitcoin accounts (or "wallets") that were party to the transactions. Once Slilpp sends the sellers the Bitcoin, the seller/users can then take the Bitcoins from Slilpp (withdrawal) and deposit them into other Bitcoin wallets/accounts.

### Slilpp User 633 a/k/a TeRorPP a/k/a PlutuSS

From May 2016 through at least March 27, 2021, the defendant was a vendor on the Slilpp online criminal marketplace and engaged in the unlawful sale of account credentials. The evidence shows that defendant individually, and together with the administrator(s) of the Slilpp marketplace, acted to unjustly enrich himself by selling stolen login credentials through Slilpp. The defendant, using the monikers "TeRorPP" and "PlutuSS," registered for an account in 2012. Thereafter, the defendant possessed and listed for sale more than 400,000 account credentials and sold more than 300,000 account credentials in exchange for Bitcoin. The defendant received at least $220,000 from the sale of account credentials based on a review of his Bitcoin account withdrawals from Slilpp.

The details of defendant's criminal activities on and through the Slilpp marketplace were derived from images of the computer servers that hosted the Slilpp website, which were obtained pursuant to a mutual legal assistance treaty (MLAT) and search warrants. The Slilpp server images contained subscriber data for both buyers and sellers, as well as the transactional data for all

transactions conducted between 2012 and March 2021. The evidence against the defendant also includes wiretap data, search queries of FBI obtained datasets from seized cybercrime marketplaces and forums, open-source intelligence searches (OSINT)[2], and subscriber information from digital currency exchanges and Instagram accounts registered by the defendant.

The defendant carried out the above-described crimes on Slilpp as user ID 633 identifying himself with the monikers "Torqovec," "TeRorPP," and "PlutuSS." Slilpp records show that Slilpp user "TeRorPP" used numerous Bitcoin wallets for withdrawing Bitcoin from his Slilpp account and depositing them to other Bitcoin wallets/accounts. Most of the withdrawals (132 out of 182) by "TeRorPP" from Slilpp were deposited into Bitcoin wallet/account that was hosted/provided by BTC-e. Additionally, the support chat system within Slilpp showed that the user "TeRorPP' sent a message requesting funds be sent to the BTC-e wallet. The BTC-e subscriber records listed an email address of test.722@yandex.ru and username "Torqovec" for the BTC wallet that received the proceeds from the "TeRorPP" Slilpp account. The email address test.722@yandex.ru was used to create accounts on multiple carding and cybercrime forums. All the accounts created on these forums had the username "Torqovec." Torqovec is a unique username not previously observed in other investigations.

The FBI obtained subscriber information for an account associated with a WebMoney ID (WMID)[3] (the account connected to "Torqovec" and the test.722@yandex.ru email account through posts made on various criminal forums). The identity of the user "Torqovec" registering with an email address of test.722@yandex.ru was verified by WebMoney through a passport

---

[2] OSINT is publicly available information obtained from various internet sources.

[3] The identifier of user (WMID) is a unique 12-Digit number, which is the address of a member within the WebMoney system. WebMoney is an online payment settlement system established in Russia in 1998. It is one of the largest electronic payments processors in Russia by number of users.

document uploaded by the user for identity authentication. The subscriber information for the WMID correlated a few key points: First, the email address (test.722@yandex.ru) used to register the WMID account matched the email address used to register on a) the carding forums, b) the BTC-e account that received Slilpp deposits from the Slilpp sales by user ID 633 or "TeRorPP", and c) the social media accounts described below. Finally, it provided investigators with a name and photograph of the person associated with these pieces of information. The passport name and surname translated to Georgy Kakhovich Kavzharadze.

The email address test.722@yandex.ru was used to create an account on Instagram at www.instagram.com/bigbadgogi. In September 2018, Instagram returned, pursuant to legal process, records associated with email address test.722@yandex.ru. These records showed that the email address test.722@yandex.ru was associated with Instagram Target ID 592105114. A review of the account's photographs revealed images of a person resembling the WebMoney subscriber "Kavzharadze." Additional open-source research identified a social media account on VK.com (a Facebook competitor that is popular in Russia) under the name Georgy Kavzharadze. The images of the VK account holder resembled the passport photo from WebMoney and the Instagram account.

## Legal Framework

Under the Bail Reform Act, the Court "shall order" that a defendant be detained if it determines after a hearing that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995). The government must prove the defendant presents a risk of flight only by a preponderance of the evidence, while it must prove

that the defendant is a danger to the community by clear and convincing evidence. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). The government may present evidence by way of proffer, *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996), and "[t]he rules concerning admissibility of evidence in criminal trials do not apply" at a detention hearing, 18 U.S.C. § 3142(f).

The government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *see also Williams*, 798 F. Supp. at 36.

## **Argument**

The United States respectfully submits that the factors set forth in 18 U.S.C. § 3142(g), together with a review of the evidence in this case, demonstrate the defendant presents a serious risk of flight, such that no condition or combination of conditions would reasonably assure his appearance and the safety of any person and the community.

In assessing the risk of flight presented by the defendant, the Court must assess factors including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; and (3) the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(1)-(3).[4] These will be addressed in turn.

---

[4] The government is not relying on the defendant's danger to the community for detention under 18 U.S.C. § 3142(g)(4). However, it is worth noting that, should the defendant flee the United States before he is brought to trial, he has foreign ties, access to cryptocurrency, and ties to online

A. **The Nature and Circumstances of the Offense Charged**

The nature and circumstances of the offenses weigh in favor of pretrial detention for several reasons. The grand jury found probable cause to believe that the defendant committed Conspiracy to Commit Bank and Wire Fraud, Bank Fraud, Access Device Fraud, and Aggravated Identity Theft. The defendant is charged with an ongoing pattern of fraud and identity theft, not just a single isolated instance. The defendant's conduct involved working with fellow conspirators to illegally obtain and sell hundreds of thousands of victims' account credentials, PII, and financial information. These charges arise from years of the defendant's conduct as a seller on the criminal marketplace Slilpp. In addition to his activities on and through Slilpp, the defendant maintained online accounts/personas on various internet forums dedicated to cybercrime and carding activities.[5]

Kavzharadze is charged with serious felony offenses that could subject him to substantial criminal penalties. In Count One of the Indictment, Kavzharadze is charged with bank and wire fraud conspiracy in violation of 18 U.S.C. §§§ 1349[6], 1344(2), and 1343(h), exposing him to a maximum sentence of up to 30 years of imprisonment. Counts Two through Five charge Bank Fraud in violation of 18 U.S.C. § 1344(2), each of which is punishable by up to 30 years of imprisonment; Counts Six through Eleven charge Access Device Fraud in violation of 18 U.S.C.

---

forums dedicated to illegal hacking and carding activity that would enable him to return to a life of cybercrime from anywhere in the world.

[5] Law enforcement has access to numerous databases from various online forums dedicated to illegal cybercrime activity.

[6] Under 18 U.S.C. § 1349, the penalty for Bank Fraud and Wire Fraud conspiracy is "the same" as the penalty "prescribed for the offense the commission of which was the object of the conspiracy." Here, the objects of the conspiracy included Bank Fraud under 18 U.S.C. § 1344(2) and Wire Fraud under 18 U.S.C. § 1343, both of which are 30-year offenses.

§§ 1029 (a)(2) and 1029 (a)(3), each of which is punishable by up to 10 years; and Counts Eleven through Fifteen in violation of 18 U.S.C. §§ 1028A(a)(1) carry a two-year mandatory minimum. Although the actual sentence imposed is likely to be less than the statutory maximums, the level of criminal exposure in this case creates a significant incentive for the defendant to flee. *See, e.g.*, *United States v. Anderson*, 382 F. Supp. 2d 13, 15 (D.D.C. 2005) (citing "maximum penalty of 23 years" in support of detention). Courts have repeatedly held that with serious charges and the possibility of considerable punishment comes "a substantial incentive to flee the United States." *See United States v. Vo*, 978 F. Supp. 2d 41 (D.D.C. 2013).

If defendant were convicted, the primary factor driving sentencing will be the loss amount. The charges stem from the defendant's consistent, deceptive, and fraudulent conduct, involving the fraudulent use and possession of over 31,967 sets of stolen login credentials that lawfully belonged to thousands of victims across the United States. These stolen login credentials were then used to conduct at least $5,000,000 in fraudulent transactions. The persistent nature of the offense(s) here is particularly relevant to detention because the defendant's actions occurred over multiple years, involved multiple criminal websites, numerous online personas, and harm to thousands of people, as well as multiple business entities, including U.S. financial institutions.

If the defendant were convicted on all counts, particularly considering the actual losses (at least $5,000,000) and the loss amount (over $15,000,000) using the Access Device calculation under U.S. Sentencing Guidelines 2B1.1 comment 3.F(i), the defendant would likely face a recommended sentence under the U.S. Sentencing Guidelines between 10 and 12 years in prison,

plus an additional mandatory-minimum sentence of at least 2 years in prison for Aggravated Identity Theft.

The lengthy potential period of incarceration coupled with the potential large financial penalties creates substantial exposure for the defendant and increases the reward for fleeing the jurisdiction. Kavzharadze is also facing potential forfeiture, pursuant to 18 U.S.C § 981(a)(1)(C) and 28 U.S.C. § 2461(c), of any property, real or personal, which constitutes or is derived or traceable to the proceeds of the offense(s). This could include the forfeiture of substitute property, meaning the defendant's personal property, in accordance with 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c).

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is strong and favors detention. The government obtained multiple copies of the entire backend database of the criminal marketplace Slilpp. This database contained user information, cryptocurrency accounts and transactions, sold and unsold account credentials, internal communications, and numerous other data sets valuable to understanding the breadth and scope of this illegal enterprise. In addition to the database, the FBI obtained know-your-client (KYC)[7] documentation (government identification) and subscriber information from two financial service providers. The KYC documentation and subscriber information linked the defendant to online monikers and account postings in cybercrime and carding forums. The FBI then correlated the KYC documentation, subscriber information, and online monikers with the defendant's social media accounts (and photographs of the defendant). After indictment, the defendant's whereabouts were detected via his Instagram account, which was registered using the test.722@yandex.ru email address that was also used for registering on

---

[7] Know your client or customer (KYC) – specific sets of rules for validating the identity of participating entities and individuals in specific financial services.

cybercrime forums. The investigation revealed overlaps between the "Torqovec" and "TeRorPP" monikers including password usage, the users' (TeRorPP and Torqovec) same IP addresses frequently accessing multiple platforms (known as IP overlap, which can indicate that domains are being accessed from the same device and/or users), and utilization of unique instant messaging application user IDs. These points of correlation further confirm that Slilpp user ID 633 is Kavzharadze.

### C. The History and Characteristics of the Defendant

The history and characteristics of a person include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Here, the defendant's characteristics demonstrate his risk of flight.

For understandable reasons, courts routinely find a serious risk of flight where, as here, a foreign-national defendant has few or no ties to the United States. *See, e.g., United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017); *United States v. Hussain*, 6 F. App'x 50, 51-52 (lst Cir. 2001); *United States v. Townsend*, 897 F.2d 989, 995-96 (9th Cir. 1990). First, the defendant, a Russian national, has no "family ties" in the District of Columbia, no significant ties to the United States, no employment or ability to gain employment in the United States, unknown financial resources[8], no residence in the community or the United States, and was brought to the United States for the sole purpose of prosecution for his offenses. Just after indictment, the defendant was observed traveling several times between Russia, Georgia, and Turkey as U.S.

---

[8] The investigation revealed numerous cryptocurrency wallets serviced by various providers across the globe through the Slilpp server. It is unknown what other financial resources and holdings the defendant may have access to.

authorities attempted to execute an arrest warrant issued by this Court. His travel to the countries extended several weeks, demonstrating an ability to remain abroad for long periods of time. Second, considering the potential sentence of 10 to 14 years of incarceration, the defendant has every incentive to flee, no reason to stay, and a demonstrated expertise in identity theft and electronic crimes that would almost certainly aid him fleeing this Court's jurisdiction. Simply put, Kavzharadze has no incentive to appear before this Court and submit to the jurisdiction of the United States.

## Conclusion

For the foregoing reasons and those that will be set forth at the detention hearing, the United States respectfully submits that no condition or combination of conditions will reasonably assure the appearance of the defendant. The government also submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight, and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the United States requests that the Court order the pretrial detention of the defendant.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   /s/ *Joseph Misher*
Joseph Misher
Special Assistant U.S. Attorney
D.C. Bar Number 1619739

Christine Macey
Assistant U.S. Attorney
D.C. Bar Number 1010730
United States Attorney's Office

601 D Street NW
Washington, D.C. 20530
Joseph.Misher@usdoj.gov
Christine.Macey@usdoj.gov