IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>GEORGY KAKHOVICH KAVZHARADZE,<br>    a/k/a "TeRorPP,"<br>    a/k/a "Torqovec,"<br>    a/k/a "PlutuSS,"<br>    a/k/a "George Kakhovich Kavzharadze,"<br><br>    *Defendant.* | Case No. 21-CR-531 (CKK) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Sentencing Memorandum. The defendant engaged in serious criminal conduct over a five-year period, for which he should receive a significant sentence. In that context, and under the totality of the circumstances, the government submits that the defendant should be sentenced to 168 months in prison, which is the bottom of the defendant's Guidelines range as calculated by the government and Presentence Investigation Report (hereinafter "PSR").

## OVERVIEW

On the "grandfather of all [stolen account] marketplaces,"[1] the defendant was a prolific seller of stolen login credentials between 2016 and 2021. The stolen login credentials that the defendant uploaded for sale on Slilpp generated over $380,000 in sales for the illegal marketplace; the defendant withdrew about $230,000 in proceeds for himself; and the stolen credentials he sold

---

[1] The Record by Recorded Future, "Government News Authorities seize Slilpp, a marketplace for stolen login credentials," available at https://therecord.media/authorities-seize-slilpp-a-marketplace-for-stolen-login-credentials/. Recorded Future is a prominent cybersecurity firm.

were used in thousands of fraudulent transactions. While the actual pecuniary and other damage inflicted by the defendant is difficult to calculate with certainty, the government has been able to confirm an actual loss totaling at least $1,200,000. Under the U.S. Sentencing Guidelines, the access device calculation is the appropriate loss calculation, which is more than $250,000,000 but less than $550,000,000.

From at least 2016 through 2021, Georgy Kavzharadze (hereinafter "the defendant") sold stolen login credentials for various companies and banks on the online marketplace Slilpp. The defendant participated in this scheme to make money, knowing that the login credentials he sold would be used for fraudulent purchases. Based on the access device loss calculation, the United States Sentencing Guidelines (hereinafter "U.S.S.G." or "Guidelines") recommend that the Court sentence the defendant to between 168 and 210 months of imprisonment based on a total offense level of 35. The government also requests an order for restitution.

<u>The Slilpp Marketplace: Overview</u>

The Slilpp marketplace operated from about 2012 until June 2021, when a United States Magistrate Judge of this Court issued a seizure warrant directed at the servers supporting Slilpp. During its operation, Slilpp was known as one of the largest and most prolific marketplaces for stolen login credentials and related personal identifying information ("PII") related to economically valuable accounts. It had tens of thousands of registered users and was used in connection with the sale of stolen information related to tens of millions of accounts, originally focusing on Company E accounts, but ultimately expanding to accounts for hundreds of providers in the United States and abroad.

The Slilpp marketplace functioned as a conspiracy – a collective enterprise requiring multiple participants with different roles, including roles for promoting Slilpp, operating the

website, and uploading login credentials to sell, which were purchased by customers. The administrator(s), sellers, and customers of Slilpp participated in and conduct, individually and collectively, criminal schemes to profit from the fraudulent use of stolen login credentials, schemes that necessarily involved wire fraud, bank fraud, access device fraud, and aggravated identity theft. The administrator(s) of Slilpp knowingly, intentionally, and willfully created, maintained, and operated an Internet-based platform that sellers, such as the defendant, knowingly, intentionally, and willfully used to sell stolen login credentials. The administrator(s) and the sellers worked together, through Slilpp, to sell those stolen login credentials, and to share the proceeds of the sales, knowing that their customers will unlawfully use said login credentials to fraudulently obtain money, property, and PII belonging to innocent owners and financial institutions.

Identification and Arrest of the Defendant

The records obtained from the Slilpp servers showed that tens of thousands of users had registered accounts on Slilpp, including both buyers and sellers. The FBI and the Department of Justice worked to identify high-ranking sellers and buyers through a variety of investigative means. Based on information obtained from the Slilpp servers, user number 633 registered for an account in 2012 with the username "TeRorPP." Further investigation allowed law enforcement to identify the defendant as TeRorPP on the Slilpp marketplace.

On August 24, 2021, a grand jury returned an Indictment, charging the defendant with Conspiracy to Commit Bank Fraud and Wire Fraud (Count One), Bank Fraud (Counts Two through Five), Access Device Fraud (Counts Six through Eleven), and Aggravated Identity Theft (Counts Twelve through Fifteen). On October 15, 2021, the defendant was arrested in the country of Georgia. On May 16, 2022, he was extradited to the United States and first appeared in United States District Court for the District of Columbia on May 18, 2022.

The Offense Conduct

The defendant was a prolific seller on Slilpp from as early as 2012. Between July 2016 and May 2021, the defendant, using the name "TeRorPP," listed over 626,193 stolen login credentials for sale on Slilpp and sold over 297,398 stolen login credentials on Slilpp. Those credentials were subsequently used in connection with fraudulent transactions totaling at least $1,200,000. This calculation is based upon responses to legal process from companies identifying losses incurred by the defendant's sale of customer accounts that were used in subsequent fraudulent transactions.[2] Table 1 shows the distribution of actual losses incurred by each organization:

| Table 1 | |
|---|---|
| **Organization** | **Actual Losses** |
| Company E | $48,364.67 |
| Company F | $8,101.12 |
| Company G | $494,487.71 |
| Company H | $7,614.11 |
| Company I | $655,754.85 |
| Bank J | $19,199.01 |
| **Total** | **$1,233,521.47** |

Throughout his activities as a Slilpp seller, the defendant withdrew approximately $228,423.29 in profits (in the form of Bitcoin) from his Slilpp account between February 2015 and March 2021.

**SENTENCING GUIDELINES**

A. Loss Amount Calculation

On February 16, 2024, the defendant entered a guilty plea to one count: Conspiracy to Commit Bank Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1349, 1343, 1344(2) (Count One of the Indictment). The plea agreement states that the parties have not reached an agreement

---

[2] Bank A, B, C, D, and Company E were identified and referenced in the Statement of Offense (ECF No. 42). Restitution is also required for companies F, G, H, I and Bank J. Should the Court want those organizations' true identifies in advance of the sentencing hearing, the government will provide them in the Court's preferred format.

over the proper loss calculation and, accordingly, have not reached an agreement on the total offense level. In the plea agreement, the parties agreed the defendant's conduct led to fraudulent transactions totaling more than $550,000 but less than $1,500,000. ECF No. 44 at 3. The plea agreement also states that the government's position is that Application Note 3(F)(i) of § 2B1.1 applies, providing for a loss calculation of $500 per access device. *Id.*

Because this case involves unauthorized access devices, the Sentencing Guidelines provide that the loss "shall not be less than $500 per access device." § 2B1.1 Application Note (3)(F)(i). Here, as agreed to in the Statement of Offense, the defendant's Slilpp account listed for sale 626,193 stolen account credentials between July 2016 and May 2021. ECF No. 42 (Statement of Offense) at 6. At $500 per set of login credentials, the loss for 626,193 credentials is calculated as $313,096,500. This falls within USSG § 2B1.1(b)(1)(O), with the amount more than $250,000,000 but less than $550,000,000.

As stated above, the plea agreement does not resolve the proper loss calculation. The government maintains that the appropriate loss calculation is the access device loss calculation. However, if the Court were to calculate the loss using the actual loss attributable to the defendant's sales (at least $1,200,000), the figure would fall in the range of more than $550,000 but less than $1,500,000. *See* ECF No. 44 (Plea Agreement) at 3. That would result in an increase of 14 offense levels under USSG § 2B1.1(b)(1)(H), leading to a total offense level of 21[3] and Guidelines range of 37 to 46 months. PSR ¶¶ 87, 88.

B. <u>Guidelines Analysis</u>

The government agrees with the United States Sentencing Guidelines calculation as laid

---

[3] The plea agreement contemplates an estimated offense level of 23 under the actual loss calculation. The two-point difference stems from the fact that the plea agreement does not account for the two-point reduction under § 4C1.1 as found to apply in the PSR.

out in the PSR. Under the Guidelines with the access device loss calculation, the defendant's total offense level is 35.

The base offense level for Conspiracy to Commit Bank Fraud and Wire Fraud in violation of 18 U.S.C. §§ 1349, 1343, 1344(2), is 6 pursuant to U.S.S.G. § 2B1.1(a)(2). PSR ¶ 38. Because the loss exceeded $250,000,000 under the access device calculation, an additional 28 levels are added pursuant to U.S.S.G. § 2B1.1(b)(1)(O). PSR ¶ 39. A two-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), because the offense involved 10 or more victims. PSR ¶ 40. Another two-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(10)(B), because the defendant used sophisticated means. PSR ¶ 41. A final two-level increase is warranted, pursuant to U.S.S.G. § 2B1.1(b)(11)(B)(i) because the offense involved the trafficking of unauthorized access devices. PSR ¶ 42 A three-level reduction, pursuant to USSG § 3E1.1(a) and (b), is warranted because the defendant demonstrated responsibility by pleading guilty. PSR ¶¶ 48-49. The defendant has no criminal history points, placing him in Criminal History Category I. The defendant is eligible for a Zero Point Offender adjustment pursuant to USSG §4C1.1, resulting in an additional two-point reduction. PSR ¶ 50. With a total offense level of 35 and Criminal History Category of I, the recommended imprisonment range using the access device loss calculation is 168 months to 210 months.

## THE 18 U.S.C. § 3553(a) FACTORS

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of

the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims.  18 U.S.C. § 3553(a)(1)-(7).

> A. <u>The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense</u>

The government submits that the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense weigh in favor of a significant sentence.  First, the defendant's fraudulent acts were committed deliberately, intentionally, and over an extended period of time.  These were not crimes committed on an impulse, nor were they the product of a failure to think – rather, they were the product of sophisticated execution.  Second, the defendant's crimes were committed with a clearly fraudulent intent. The defendant participated in a scheme to sell stolen financial credentials belonging to people who had been victimized by a breach, knowing that the buyers of those account credentials would use them to make fraudulent purchases for their own financial gain. Finally, participating in this scheme as a prolific seller of accounts made the defendant part of a criminal ecosystem for cyber-enabled fraud and theft.  A significant period of incarceration is warranted to reflect the seriousness of the offense.

> B. <u>The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public</u>

For the reasons set forth above, the government submits that the circumstances of this case demand a significant sentence to promote respect for the law, provide adequate deterrence to the defendant and others, and justly punish the defendant for his conduct. The defendant was part of an online community of people who commit cybercrime and contribute to one another's cybercrime and fraud.  The sentence that the Court imposes in this case will provide an important signal to others in the same sort of environment; it is important they see that committing these

crimes is not worth the risk.

    C. <u>The History and Circumstances of the Defendant</u>

The defendant is 27 years old and has lived in Moscow, Russia his entire life prior to his arrest and extradition. PSR ¶¶ 60, 63. He reported a "very happy childhood" in a working-class family and maintains "close relationships with all family members." PSR ¶ 61. The defendant has never been married and has no children. PSR ¶ 62. He reported graduating high school in 2014 and attending Moscow State Construction Engineering University from 2014 to 2019, from which he obtained a degree in construction engineering. PSR ¶ 73. The defendant was self-employed prior to his arrest. PSR ¶ 76. He has no known prior criminal history. PSR ¶¶ 52-58.

    D. <u>Unwarranted Sentencing Disparities</u>

The District of Columbia Circuit Court has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007).

The government believes its recommended sentence for the defendant will avoid any unwarranted sentence disparities. In making its sentencing request, the government has taken into

account how it has handled similarly situated cases.

## Restitution

The defendant should be ordered to pay restitution. "The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, requires a district court to order a defendant to make restitution to a victim of certain specified offenses." *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016) (internal quotations and citations omitted). The offenses subject to the MVRA are listed in section 3663A(c). *See* 18 U.S.C. § 3663A(c). They include "any offense that is . . . an offense against property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The "purpose of the MVRA is essentially compensatory: to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (internal quotations and citation omitted).

Restitution in the amount of $1,233,521.47 is appropriate to compensate the actual losses incurred by the affected companies and bank as a result of the defendant's conduct. As listed above, the breakdown of this figure is as follows:

| Organization | Actual Losses |
|---|---|
| Company E | $48,364.67 |
| Company F | $8,101.12 |
| Company G | $494,487.71 |
| Company H | $7,614.11 |
| Company I | $655,754.85 |
| Bank J | $19,199.01 |
| **Total** | **$1,233,521.47** |

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a total of 168 months in prison. The government further requests that the Court order the defendant to pay restitution in the amount of $1,233,521.47. The government does

not seek a term of supervised release given the defendant is a noncitizen. *See* USSG § 5D1.1(c).

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

                /s/ *Joseph A. Misher*
                Joseph A. Misher
                Special Assistant United States Attorney
                D.C. Bar No. 1619739
                601 D Street NW
                Washington, DC 20530
                (202) 658-8806
                Joseph.Misher@usdoj.gov

                /s/ *Christine M. Macey*
                CHRISTINE M. MACEY
                Assistant United States Attorney
                D.C. Bar No. 1010730
                Fraud, Public Corruption, and
                Civil Rights Section
                601 D Street, N.W., Room 5.1519
                Washington, D.C. 20530
                (202) 252-7058
                Christine.Macey@usdoj.gov